Mr. Thompson, good morning. Good morning. May it please the court, Adam Thompson on behalf of the appellant, John Ausby. I'd like to reserve two minutes of my time for rebuttal. We've got new microphones and I, I don't, can you. Of course. The government in this case presented false and misleading testimony from an FBI forensic scientist that purported to scientifically link Mr. Ausby to, among others, five hairs found on the decedent's body, including two hairs that were found in the area of the decedent's rectum. In a case that was entirely circumstantial, where the identity of the perpetrator of this rape and murder was the sole contested issue, where the government purposely developed and elicited false forensic testimony to go directly to that contested issue, and where the government repeatedly relied on the false testimony in closing argument and any devastating rebuttal argument that, that directly undercut Mr. Ausby's defense, this court must reverse because there is at least a reasonable possibility that the false hair testimony had an effect on the jury's verdict. When the government has affirmatively corrupted the truth-seeking function of the trial with false evidence that it was knowingly presented, as it did here, the test for reversal is not whether subtracting the false testimony from the whole, the government still had a sufficient case. The analysis in NACU cases looks at the effect of the false testimony on the trial that actually happened, giving deference to how lay jurors interpret evidence, apply the presumption of innocence, and hold the government to its heavy burden of proof beyond a reasonable doubt. The question. What does it mean to affect the jury's judgment? When, as you've said, it doesn't mean just subtract the bad evidence and see if there's enough left standing. Does it mean they relied on it? Does it mean they dispositively relied on it? Does it mean it could have factored into their decision? So the standard for this court, which is very strict against the government, is the, is there any reasonable possibility that this false testimony might have played a role in the jury's verdict? And that's something the court has made clear in Cunningham and Smart and multiple other cases. And just to be clear, so when you say it might have played a role, it might have, it could play a role in the sense that the jury might have talked about it. But what you mean by it might have played a role is it might have played a role in that it caused the jury to find the defendant guilty. Yes, I think that's, I think that's correct. Does it have to be causal in that sense? What if, what if they go back to a jury room and go, tons of circumstantial evidence here and there's a hole here and a hole there and a hole there. Boy, there's a lot of circumstantial evidence. And you know what? We don't have to deal with those holes because this expert came and told us all about how science, the science itself pointed to his guilt. Is that affecting the jury's verdict? Yes, that is exactly affecting the jury's verdict. They don't actually have to cause the verdict if they could still come to the verdict. Anyhow, if it just influences their processing of the case, their thinking about the case. Well, to be clear, in this case, this is this is false forensic testimony that went directly to the contested issue at trial. I think in that instance, this court can't be certain that there is no reasonable possibility that the jury didn't use that that that false evidence in some way in reaching its verdict. And that's the standard that that this court has to apply. There was a bit when you say use it in some way, because I think a lot turns on the exact role that the evidence plays in the jury's decision making. So suppose the jury says that hair testimony is quite something and they talk about it at length. The jurors talk about it at length and then they collectively say, you know, I think it seems pretty clear to me that we would find the defendant guilty anyway. But the hair testimony just makes it a little bit easier. But we would definitely find it seems pretty clear to me we would find the defendant guilty anyway. I think about that. I think the fact that this court is kind of speculating about what the jury might have said on these on these points in its in its deliberation shows that it very well might have affected. No, but you're just just just if you could just engage the hypothetical, because at least I'm trying to figure out how much work is enough, because that a lot seems to turn on that. And so if we thought that the jury, I think your points are well taken that the prosecutor's rebuttal argument focused on the hair testimony. So we've got the government itself thought that the hair testimony was at least significant enough that the rebuttal needed to focus on it. So I think at least I take your point that the government thought that it played some role. And then the question becomes, well, what did the jury do with it? And if the jury thought, you know, I it's pretty clear that this person's guilty anyway. But the hair testimony just makes it easier. If we know if we have a recording device in the jury's deliberations and that's what we know, what would you say about that? Yes, that is that is most definitely an effect on the verdict under the standard that this court must apply because the jury didn't have to wrestle with the ambiguities in the rest of the government's case. Mr. Ogbe presented a very clear defense theory that was consistent with the remainder of the government's evidence. And as shown in the prosecution's rebuttal argument, that that false hair evidence was deployed to directly undercut that that defense. And so in that instance, the jury surely if as to your hypothetical, if the jury was saying, well, here's the hair testimony, we don't have to deal with the rest of the evidence. Yes, that's an effect on the verdict. Now, what if the jury says we definitely would find the defendant guilty regardless of the hair evidence? But that hair evidence was was really interesting and quite powerful. But we would find the defendant guilty anyway. Just to add, it makes us feel really confident in our judgment that we would reach otherwise. Yeah, yeah, sure. Yeah. Well, to be to be clear, we we don't think that's what the jury would have would have been doing because they're the evidence in this case. As we as we've said in our briefs was and incited the gaps in the government's evidence that was entirely circumstantial and ambiguous. And on this point, that's exactly the type of case where the jury would be clinging to this type of false forensic testimony that went directly and answered conclusively. The question of identity. I think if the jury is is is saying we think this other evidence is strong and yet. But there's this this false testimony that answers the question. As this court has said in Cunningham and smart and multiple times, he in order to avoid encroaching on the defendant's right to a jury trial, this court must apply this standard that that does look at the entire record of the case and has to determine whether it was harmless under reasonable doubt. And if this court can't be certain that the false hair testimony did not in some way move the jury, the jury's conviction towards the side of of conviction, then that is that is an effect on the verdict. And so can I ask you your position if just the hair had been introduced? In other words, a black male hair found on the body of the victim without anything else probative or not? Extremely probative, Your Honor, especially given the locations where these hairs were found. And that's exactly so. Why wouldn't that be in this? In other words, no expert testimony. Just what was found. Oh, I'm sorry. I missed that. There wasn't expert testimony. I don't think that would be probative at all. You don't. I don't. In the same way that this that the government has has. That's why the government developed and elicited this false hair testimony in this case and and hundreds of others. So doesn't it happen often, though, that hair, for example, suppose you have a situation in which the victim is has long blonde hair and then there's long blonde hair found in the backseat of the car of the defendant. Would that would that evidence not come in? I think in that case, the judge would be hard pressed to find a reason that that would be probative. I mean, as we've seen in this case in the government's own admissions, even even a hair that's been compared under a microscope. The analyst has no idea how many people that hair could have come from. And yet this this evidence making it unmistakable to a jury that that was a conclusive identification of positive identification, which was false, was developed specifically to get around. I didn't mean to jump in on the hypothetical. I'm sorry. I think I'm trying to ask the same question as Judge Henderson was, which is it may not be. It may not be proof that it's the same person. And that's where the statistical part of it comes in. But if the evidence is just probative to show that it could be this person. So it's that the victim has long blonde hair. And what we when we looked in the defendant's car, we saw that there were long. And the defendant doesn't have long blonde hair. I'm sorry. I should have made that clear. Let's say the defendant has short brown hair. And then we when we look in the backseat of the defendant's car, we see that there's long blonde hair in the backseat of the defendant's car. And you're right. That doesn't prove that it was the victim. But it proves that somebody with long blonde hair was in the backseat of the car. Does that actually not come in? I honestly don't know. But it is possible that it might come in. But again, here, this was powerful, objective forensic science testimony going directly to the question of identity. And it included false testimony that was specifically designed to imply a positive identification and and show the jury that Mr. Osby was guilty beyond a reasonable doubt, just on that evidence alone, because of the locations where the hairs were found. And again, that's exactly your argument, the rebuttal argument to devastate Mr. Osby's defense. How probative do you think the oils were in this case? They were handwritten labels that the vendor testified he sold to the defendant. The defendant, the day after the murder, goes to the vendor and says, I need another vial or whatever of this oil. And when asked why, I just told you some recently, he said, I jumped out a window, which is exactly what happened or at least what they feel happened when they found vials of these oils beneath the window. So to me, well, I'm not the juror, but that's extremely probative evidence. Well, Your Honor, I think no matter what that oil evidence could suggest to the jury, it wasn't even close to the kind of conclusive testimony that came from this forensic expert. I think it's a signature. I think it's a signature. That's how probative it is. But go ahead. Well, I mean, my other point is that this is that that oil evidence was consistent with Mr. Osby's defense that he was in the apartment on December 9th and 10th, four and five days before the murder, left through a window, didn't come back and wasn't there during the rape and murder. That evidence was consistent. The oil evidence was consistent with Mr. Osby's defense. And again, that that's exactly the kind of ambiguity and gap in the government's case in which the hair testimony would come in and resolve all those ambiguities for for the jury. So just because with the with the oil perfume evidence, it would be consistent with the defense if the perfume and oil were found in the in the unit. I get that. But it's the placement and the way it appeared that bolsters the case for the government. Right. Because it's not just that the perfume was found there. It's that it was found there in a situation which would be consistent with a struggle that led to it and an effort to jump out the window, which is a little bit different than just finding it there. I'm not necessarily saying it's enough, but I'm saying that it's more than just finding the evidence there. Well, I think that's right, except for there was not. There was not any additional testimony. This was late testimony about the the oil evidence. First of all, there wasn't any additional testimony about the positions of the of the bottles that would have conclusively proved that this was dropped in a struggle. As the government says in its brief, it suggests that. But again, no matter what this oil evidence could suggest to the jury, it paled in comparison to this false forensic testimony that came in and resolved all of the ambiguity that would have been raised in the jury room between late testimony that was in some ways equivocal about when Mr. Osby returned to the shop and weighing that against this false testimony that directly resolved the issue. All right. We'll give you a couple of minutes to reply. Good morning, and may it please the court. Jesse Liu for the United States. The question before this court is fairly straightforward. As this court has said in evaluating a NAPIU claim, it must determine whether the false testimony could in any reasonable likelihood have affected the judgment of the jury. In other words, could the false testimony here, the hair testimony have made a difference in the jury's ultimate verdict? What do you answer? I say my same questions about what effect the judgment of the jury means in practical terms. If it has to mean something different from changes, the quantum of evidence in a way that would take away or would create reasonable doubts. We put aside that. What does it mean to affect how the judge, the jury's judgment is made? Well, Your Honor, our position would be that to affect the judgment of the jury means that the challenged evidence, here the hair testimony, would have made a difference or could have made a difference in the jury's ultimate verdict. It's definitely a could test and not a would test. But if you look at the sort of body of case law with respect to Brady violations, for example, and NAPIU violations and harmless error tests, the question is would the result have been different? The defense makes much of a Supreme Court case called Strickler. And while we have our own issues with some of the statements in that particular case, that case is quite clear in the Brady context that the question for the court in reviewing a Brady violation is whether the favorable evidence could reasonably be taken to put the whole case in a different light so as to undermine confidence in the verdict. And there's been a lot of talk in the group. left out that was exculpatory, that something was put in with the veneer of expert scientific force into a case. So how do we figure? So it's already in there. And we're trying to figure out whether what was in there could have affected the jury's judgment. So does that, to get back to some of the hypotheticals, if the jury went back and said lots of powerful circumstantial evidence, really very, very powerful. But thank goodness there's also this expert. And that just makes this job easy. We're done. Did that affect the judgment of the jury? I think if this court can conclude from all of the other evidence before the jury that the jury would have reached the same conclusion, then there was no error. I'm telling you how it happened. So does that mean, it's counterfactual. We can't go back and say what would they have done without it in a pure sense. We don't know. It was there and we're asking what impact this scientific expertise could have had on a jury in an otherwise circumstantial case. So back to my hypothetical, would that count if we thought what most likely happened? Well, I think if the court thinks what most likely happened was that the jury thought, well, we have a pretty good, strong circumstantial case, but we're not quite there in the hair testimony. I said, I'm not saying we're not quite there. That would be too easy. Wow, what a great circumstantial case. Very, very powerful. But it's circumstantial. Thank goodness there's also the scientific evidence. We're done. I think it's a little bit difficult, obviously, to answer that hypothetical, because the question is what effect could this evidence, the hair testimony, have had on the jury's verdict? Of course, we can't know because we don't have a transcript of the jury deliberations. That's the test, unfortunately. If that's the best thing that we have, my argument would be that that is not enough to overturn the jury's verdict. We have an effect. And the way that Judge Millett articulated the question, you think in that situation it still wouldn't be enough under the NAEPU standard if they say this makes it easy, that there's a lot of powerful circumstantial evidence, but this expert testimony makes it easy? That's a situation, Your Honor, where I think it really would be right on the line. And who does the tie go to? Because I think, at least in some of our earlier decisions, we used language that discussed NAEPU. We said, mandate a virtual automatic reversal of a criminal conviction. We used language to that effect in talking about the NAEPU standard on the theory that, among the various materiality-slash-harmless-error standards, a NAEPU standard is at the most defendant-favorable end along the lines of a Chapman standard. And if that's where our decisions seem to put the NAEPU materiality standard, then in a situation in which you're in some equipoise about which way it should cut, does that not indicate that it should cut in favor of the defendant? If the jury is truly in equipoise, then I think you're right that the hair testimony could affect the jury's verdict. And I'm sorry, I didn't mean to say that the jury was in equipoise. I'm saying that the jury says what Judge Millett asked, which is that very powerful circumstantial case, but this hair expert testimony makes it easy. And then I took your response to be, well, that puts me in kind of equipoise on whether that's enough under the appropriate materiality standard. And I guess my question is, if that puts us, not the jury, but if that puts us in equipoise as to what should happen, then when I look at the language of some old cases that it should be a virtual-per-se rule of reversal, I start to think, well, maybe in a situation in which I wonder whether we're in equipoise, then the defendant, the apparently defendant favorable nature of the materiality standard would tip the balance for us. Well, again, I could only go back to the way that this Court has formulated the standard. And it is, again, a could standard. And the Court, to some extent, has to work with a counterfactual, not knowing exactly what the jury was looking at. But I do think it's important in this case, as in other cases, to look at the other evidence in the case. And the case law has suggested that even in a situation like this, the reviewing Court cannot ignore all the other evidence in the case. And here, as we've said... I'm sorry, have you seen cases where expert testimony, that sort of freestanding expert testimony, proving something that nothing else is proving, has been held to be harmless? I'm not able to cite you anything off the top of my head about that. I do have a few comments that I'd like to make about the impact of the fact that this was expert testimony, though. There are cases in this circuit that talk about expert testimony in the case of ambiguous other testimony. Our position is that the circumstantial evidence in this case was not at all ambiguous. It was certainly circumstantial, but there were a lot of circumstances, and they all pointed towards this defendant. Second, as is common in the district courts today, the district court in this case was very careful to instruct the jury about what use they could make of the expert testimony. And so they were told that they should give it the amount of weight that they deemed appropriate, and that they could reject it if they believed that that was the appropriate thing to do. In this case, the expert testimony was but one small part of a very, very strong case that all pointed towards the defendant. It was evidence that spoke directly to the critical issue in the case, and that was, was Mr. Osby in the apartment in the bedroom at the time, at the time of the attack? It spoke directly to that most contested issue, because it wasn't disputed that he'd been in the apartment at some point beforehand. So it's what I'm trying to figure out. When you have an expert that's speaking directly through science to the central issue in the case, how does one, how would one write an opinion that says that could not have affected the jury because there was a lot of other circumstantial evidence surrounding it? I think we'd be crossing, we'd be making new law and harmlessness that way. And maybe we have to. It might be appropriate to do so. But I just haven't seen cases that involve evidence of that central force and had the extraveneur of the scientific expert. But I don't think, Your Honor, that this was, that your testimony was the only evidence that this defendant was in the bedroom and was the person who attacked this defendant. The rest of the evidence, it's all circumstantial. The only thing I said going directly to the key issue in the case, because you're trying to say it was a small part, and I think it was going right to the core of what was debated in the case. Right. And certainly the argument on the defense side was that there was a lot of evidence that this person had been in her apartment. And my point is that there was not only evidence that he had been in her apartment, but that he was the person who was in her apartment the day of the murder and that he was the person who escaped through the window when her boyfriend was knocking at the door. And so I guess the way that I would look at this, Your Honor, is that in the totality of the evidence, which is what the jury saw, in order to believe the defense theory, the jury would have had to conclude that the defendant was in the apartment on some time before the murder, that he dropped these bottles of oils for no apparent reason, and that he had gone through the window to escape, even though there was no apparent reason for him to do so. And on one other occasion, he had left another woman's apartment through the kitchen door, even when she was there. But he nonetheless, on this occasion, when there's no indication that he was in a rush, the woman was not at home, recall, she hadn't stayed there for a couple weeks, decided to leap out a window with an 18-foot drop, that he lost his oils, but he didn't recover them, and that he had the incredible bad luck to have someone else go into her apartment and attack her. We can talk about how far-fetched some of the alternate scenarios are. You could have an alternate scenario in which the perfumes were actually dropped during an exchange with somebody else because of the way they were located, and you could come up with arguments, and I know your response would be, well, that seems far-fetched, but one place that we can look concretely, to some extent, is a prosecutor's closing argument. I mean, I'm sorry, a rebuttal argument. And the rebuttal argument, it did seem like the prosecutor could have said, I'm not worried about the hair testimony because there's so much other stuff that you don't even need to worry about it. But instead, the closing argument focused in some detail on the hair testimony, the rebuttal argument. And the rebuttal argument did say, about the expert testimony, before anybody further elaborated, it's not a positive means identification, but it amounts to a positive means here, and then recounted some of the numbers, the 35,000 people that the person, that the expert had encountered in the past, and whatnot. So, if we place some significance on the way the government itself framed the significance of the hair testimony, it seems like there's at least something to be gleaned by looking at the way that the government framed the rebuttal argument. So, Your Honor, I acknowledge that that sentence that you just cited is not helpful to the government's argument today, but I also think it's important, just as it's important to look at all of the evidence before the jury, in the totality, it's also important to look at the government's arguments to the jury in their totality. So, that was one sentence in the midst of the rebuttal argument, but if you would go back to the government's closing argument, you'll see that the government spends about 15 transcript pages going through all of the non-hair testimony before it gets to a point at which it then says, is that not enough? Based on the evidence I've cited to you, which did not include the hair testimony, isn't that enough to convict this defendant and am I not boring you by going into anything else? He then goes and he talks about the hair testimony, he talks about the gun testimony, which I think is important to keep in mind because it links the gun that was found on the defendant to the bullet, not a positive ID, but links the gun to the bullet that was recovered from the victim's body. Isn't that the issue? You just said not a positive ID, but you had the prosecutor saying these hairs are identical twins, and the expert 17 times said microscopically identical. So, that seemed to be, unlike the gun, like one fingerprint in a doorway in the kitchen, I think, that seemed to be the one thing that really, had the testimony been true, locked him in as the one person who was there and did it, it's just a little hard to figure out how we could with any confidence say a jury disregarded that. If I could go back just a moment to finish my point about the rebuttal argument, it is certainly accurate that the government prosecutor spoke about the hair, he made the statement about this is not a positive means of identification, but it amounts to one here. Again, not helpful to our argument. He then turns from the hair testimony and goes back into a recitation of all of the other facts. So, I would just... After he says identical twins. Amounts to a means of positive identification. And at that stage says identical twins. The other point that I want to make about that statement in the government's rebuttal closing is that when you look at the actual testimony of the hair examiner, it's a little bit more equivocal than the prosecutor made it out to be. I think the prosecutor put the best spin for the government that he possibly could on it. But the actual examiner testifies, now he says some things that are clearly not helpful and are, to us, and are the reason why the government conceded that this was a case that deserved further review. But he also says quite clearly that hair comparisons are not a means of positive ID and that he cannot say that these hairs came from Mr. Osby's body. The jury, as is typical today in district court, was instructed that the arguments of the counsel were not to be considered as evidence and what the jury should be evaluating is the actual testimony from the expert. Thank you. Thank you. For all of these reasons and those stated in our brief, we would ask this court to affirm the judgment of the district court. No time. All right. Why don't you take two minutes? Thank you, Your Honor. So I just want to start by addressing the question that came up in both parts of the argument, and that's what does effect mean. And so our position is if it moved the jury's verdict towards a conviction, if it put the jury over the top, that's an effect on the verdict. But at the end of the day, this court doesn't have to know for sure how the jury reached its verdict. That's because the standard under which this court must decide this case, it respects the fact that we don't need to know. It respects the fact that juries decide these questions. So in this case, Mr. Osby had a defense theory. The question is, was there a defense theory that went directly to this contested issue and did this? Is there a reasonable possibility that instead of having to grapple with all of that ambiguity and the circumstantial evidence and the gaps in the government's case that the defense pointed out, and there were gaps in the government's case. Well, what happens, though, with following up on Judge Henderson's question, if whatever those gaps were, there just didn't seem to be a coherent theory from the defense as to why, how those vials would have been spewed around in the pattern that they were, including in the bedroom and on the bed, and why anybody, somebody who was perfectly comfortable walking out in the hallway other days, would jump out a window. It's not like that was an alternative route to go out. Naturally, it was an 18-foot drop. If there just didn't seem to be any way to reconcile the defense's theory, then does that mean it couldn't have affected the jury? Well, I think there were ways to reconcile that evidence with this. It certainly was a difficult fact for the defense, but the defense did deal with it in its theory. There was nothing about the oil evidence that conclusively proved Mr. Osby committed this rape and murder, and that's what the hair testimony did. The hair testimony... So going out the window, it's not just the hair vials. It's also how they were sort of spewing around the room. One was on the bed under the coat, and then he went out a window, and he told someone later that he went out a window. Why would you go out that window and drop 18 feet? That's a question the jury may well have been wondering until it used the false forensic testimony that directly answered this question for it. Well, that's not a question about the government's group. That's a question about whether there's really any explanation, since the defendant doesn't dispute that he was in the apartment. The explanation was that he was in the apartment. I mean, the jury could have speculated about multiple reasons that weren't addressed by the government, certainly about why the oil vials were... I'm sorry. My issue is not to argue the facts, but just to ask if it felt like there wasn't a big hole in the circumstantial evidence, and there was, in fact, a defense that didn't seem to quite hold together. There seemed to be a big gaping hole in the defense theory. So that whatever would have happened, they would have ended up in the same place anyhow. Does that mean that... But they didn't have to work through all that, because they said, thank goodness we have that scientific evidence. That makes it easy. Is that an effect on the jury? Yes, it is. Because? Because it allows the jury to not have to wrestle with... I mean, certainly, juries have acquitted on far less than this. It's hard to prove guilt beyond a reasonable doubt to 12 lay jurors. And in this instance, the prosecutor used the Hare evidence as its primary means of rebutting Mr. Osby's defense. I mean, the government brought up how, in his closing, the prosecutor said, wasn't that enough? Well, it clearly wasn't enough for the government in its presentation of evidence, and it wasn't enough in its argument, because in the rebuttal, it came in and used this as... It was an entire third of the rebuttal argument. It was clearly the most prominent means of rebutting Mr. Osby's defense. And that's not a fair trial, when the government can come in and use false testimony to devastate your defense and not allow jurors to actually have to wrestle with the ambiguities that were in the government's case. All right, you need to wind it up. Okay. Well, if there are no further questions, then I'll just point out that... Just to re-encourage the court, I think it's clear that you have to just read the rebuttal argument. And it shows how the government employed this false evidence to devastate Mr. Osby's defense. And so this false testimony was not harmless beyond reasonable doubt, and we ask the court to reverse the order of the district court. Thank you.
judges: Henderson, Srinivasan, Millett